CHARLES L. NEMETH, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Nemeth v. Commissioner
Docket No. 22016-80
United States Tax Court
T.C. Memo 1982-646; 1982 Tax Ct. Memo LEXIS 104; 45 T.C.M. (CCH) 58; T.C.M. (RIA) 82646; November 8, 1982. Charles L. Nemeth, pro se. Christine Barish, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: This case was assigned for trial to Special Trial Judge Darrell D. Hallett, pursuant to the provisions of General Order No. 6, 69 T.C. XV (1978). The Court agrees with and adopts his report, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE HALLETT, Special Trial Judge: Respondent determined a deficiency in petitioner's 1976 Federal income tax in the amount of $2,355. The issues for decision are (1) Whether payments made by petitioner to his ex-wife during the tax year 1976 are deductible under section 215; [1] and (2) whether petitioner is entitled to head of household filing status for the tax year 1976. Petitioner was a resident of Manhattan Beach, California at the time the petition was filed. Petitioner and his ex-wife were married in 1957. In July 1975, when they were residents of Illinois, they verbally *106 agreed to a separation. Petitioner was then working in California and later during the year he purchased a residence there. In September 1975, petitioner's ex-wife moved to California. Petitioner agreed that she and the children could live in his California residence for a 90-day period. However, petitioner's ex-wife lived in the same household with petitioner until February 23, 1976, when the parties separated. In December 1975 or January 1976, petitioner and his ex-wife verbally agreed that he would commence making support payments to her of $500 per month. Petitioner made payments to his ex-wife throughout the remainder of 1976 totaling $3,984. On March 20, 1976, petitioner instituted dissolution proceedings in the Superior Court of California, Los Angeles County. An Interlocutory Judgment of Dissolution of Marriage was entered between the parties on September 30, 1977, and a final Judgment of Dissolution of Marriage was entered on October 19, 1977. On April 2, 1976, petitioner's counsel in his divorce matters, Kenneth L. Waggoner, wrote to counsel for petitioner's ex-wife. Mr. Waggoner's letter began by stating that "Our client would like to resolve on an informal *107 basis a few issues in connection with his dissolution proceeding." Mr. Waggoner then stated that there were three issues to resolve, namely, custody, spousal support, and property division. With respect to spousal support, Mr. Waggoner stated "Mr. and Mrs. Nemeth have agreed on temporary spousal support of $500 per month." The letter noted that this amount took into account the fact that Mrs. Nemeth was then taking vocational training, and stated "Mr. Nemeth is prepared to continue this temporary support during the pendency of the proceedings; however, six months from the date Mrs. Memeth was served with the petition, this figure shall be subject to a ten percent reduction per month for every month thereafter that Mrs. Nemeth remains unemployed." Finally, Mr. Waggoner proposed as "permanent spousal support" a figure of $625 per month for five years beginning the month after the date of entry of the final judgment of dissolution.That figure, Mr. Waggoner proposed, would be subject to a reduction based upon future earnings. On July 15, 1976, Mr. Waggoner again wrote to counsel for Mrs. Nemeth and stated that since Mrs. Nemeth had then completed her training and was employed henceforth *108 Mr. Nemeth would be willing to make support payments of $625 per month, subject to a reduction based upon earnings of Mrs. Nemeth which would result in monthly payments of $253.37. By letter dated August 4, 1976, counsel for Mrs. Nemeth, Marlene Abel, wrote to Mr. Waggoner regarding the matter of support. In this letter, Ms. Abel stated, in part "The funds paid to [Mrs. Nemeth] are insufficient for her to live on and the proposals set forth in your letter is [sic] not acceptable." Ms. Abel stated that she intended to file an order to show cause to ask for temporary additional support unless the parties could reach an agreement.She then requested an agreement by Mr. Nemeth to pay temporary support of $500 per month while Mrs. Nemeth's salary approximated $550. The record reflects no further written correspondence between the parties or their counsel, nor any other written document concerning the matter of support, during the year 1976. On his 1976 return, petitioner deducted the payments, totaling $3,984, he made to his ex-wife during the year. Respondent disallowed the deduction in full on the ground that the payments were not made pursuant to a "written separation agreement. *109 " We must sustain respondent's determination. Section 215 allows a deduction to a husband for periodic support payments made to his ex-wife, provided the amounts are includible in the ex-wife's gross income under section 71. Insofar as applicable to this case, section 71 requires inclusion in the ex-wife's gross income of periodic support payments made when the husband and wife are separated and pursuant to a "written separation agreement." The term "written separation agreement" is not defined in the Code, the applicable regulations, or the legislative history.However, the term at least requires more than a written statement by one spouse offering to make support payments, and the acceptance of those payments by the other spouse. See Greenfield v. Commissioner,T.C. Memo. 1978-386; Frazier v. Commissioner,T.C. Memo. 1975-220. The correspondence between petitioner's counsel in the divorce proceedings and his ex-wife's counsel clearly does not establish the existence of a written agreement as required by the statute.Mr. Waggoner's letters of April 2, 1976 and July 15, 1976, were no more than proposals. The fact that there was no agreement between *110 the parties at the time this correspondence was taking place is illustrated by Mr. Waggoner's July 15 proposal to reduce the temporary support in the April 2 letter ($500) to $253, and by the rejection by counsel for Mrs. Nemeth of this proposal in her letter of August 4, 1976. A case relied upon by petitioner, Jefferson v. Commissioner,13 T.C. 1092 (1949), is distinguishable. There, we did conclude that a letter from a husband to his ex-wife prior to a final decree of divorce amounted to a "written instrument" within the meaning of the predecessor to section 215. However, the letter relied upon by petitioner in that case clearly recited the parties' prior agreement that petitioner would pay a specified sum of support. The ex-wife's acceptance of the agreed upon amount and subsequent events made it clear that the parties had indeed reached an agreement as to the amount of support as outlined in the letter. On contrast, the writinge involved in this case do not reflect that the parties had reached an agreement as to the matter of support. Rather, they establish that during the period petitioner was making monthly payments for which he seeks a deduction the *111 matter as to the amount of his continuing obligation to do so was very much in dispute. [2]
With respect to the question as to whether petitioner qualifies for head of household filing status, section 2(b) provides the general rule that an individual, in order to qualify as head of household, must be unmarried at the close of the taxable year. However, section 2(c) provides that an individual shall be treated as not married at the close of the taxable year if he is so treated under the provisions of section 143(b). Section 143(b) provides, insofar as applicable to this case, that an individual shall not be considered as married if during the entire taxable year his spouse is not a member of his household. The *112 stipulated facts in this case establish that petitioner was married at December 31, 1976, and that his ex-wife and he maintained the same household from January 1, 1976 until February 23, 1976. We have considered petitioner's contention that he only intended that his ex-wife occupy his California household for a period of 90 days, which was to end in December 1975, but that due to circumstances beyond his control, she did not leave the household until February 1976. Nevertheless, the statute is clear in its requirement that a married individual and his spouse occupy different households during the entire year in order for the individual to be considered as not married for purposes of the head of household provisions. Accordingly, we must decide this issue for the respondent. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. While not controlling in this case, an opinion was issued by this Court in a case involving petitioner's ex-wife and the question as to whether the payments here in issue are includible in her gross income for the year 1976. Kesler v. Commissioner,↩ T.C. Summary Opinion 1982-265. We there concluded that the same correspondence as has been introduced into the record in this case did not establish a written separation agreement within the meaning of section 71.